**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **MID-CONTINENT CASUALTY COMPANY,** )<br>　)<br>　　　　　**Plaintiff,** )<br>　)<br>v. 　)<br>　)<br>**GENERAL REINSURANCE CORPORATION,** )<br>　)<br>　　　　　**Defendant.** ) | Case No. 06-CV-0475-CVE-PJC |

**OPINION AND ORDER**

Now before the Court are Defendant General Reinsurance Corporations's Motion to Compel Arbitration and to Dismiss and Brief in Support (Dkt. ## 23, 24) and Motion of Plaintiff Mid-Continent Casualty Company to Stay Implementation of Arbitration Procedure and Brief in Support (Dkt. # 26).[1]

**I.**

Plaintiff Mid-Continent Casualty Company ("Mid-Continent") is an insurance company that underwrites commercial excess liability policies. Mid-Continent agreed to indemnify various insureds for any amounts in excess of their primary commercial liability coverage up to a specified amount as stated in the excess polices. Mid-Continent obtained reinsurance from General Reinsurance Corporation ("GRC") for portions of the losses and expenses that could be incurred by

---

[1] Plaintiff's motion to stay implementation of arbitration procedure (i.e., naming an arbitrator) will be moot regardless of whether defendant's motion to compel arbitration is granted or denied. If the Court grants defendant's motion, the matter will be referred to arbitration and any request to stay the procedure should be raised before the arbitration panel. If the Court denies defendant's motion, the case will not referred to arbitration at all, and plaintiff's motion to stay will be unnecessary. Therefore, plaintiff's motion to stay implementation of arbitration procedures (Dkt. # 26) is moot.

Mid-Continent when defending or indemnifying its insureds. Mid-Continent and GRC executed separate reinsurance contracts in 1992 and 2000. Article III of both contracts provides:

> The Company [Mid-Continent] shall investigate and settle or defend all claims and losses. When requested by the Reinsurer, the Company shall permit the Reinsurer, at the expense of the Reinsurer, to be associated with the Company in the defense of any claim, loss, or legal proceeding which involves or is likely to involve the Reinsurer. All payments of claims or losses by the Company within the term limits of its policies which are within the limits set forth in the applicable Exhibit shall be binding on the Reinsurer, subject to the terms of this Agreement.

Dkt. # 23, Ex. A, at 2; Dkt. # 23, Ex. B, at 2. The contracts required GRC to reimburse Mid-Continent for a certain percentage of losses, depending on the amount of loss, but the contracts also grant GRC corresponding rights to participate in the defense or settlement of a claim.

Both reinsurance contracts contained arbitration clauses. Agreement number B404 was executed on January 23, 1992, and contained a detailed arbitration clause providing "[a]ny unresolved difference of opinion between the Reinsurer and the Company [Mid-Continent] shall be submitted to arbitration by three arbitrators." Dkt. # 23, Ex. A, at 4. The clause outlines the procedure for selecting an arbitration panel, a briefing schedule, and an agreement for splitting the costs of arbitration. Mid-Continent and GRC subsequently entered an Interests and Liabilities Agreement Number 8793, on November 10, 2000, that also provided for arbitration in the event of dispute, stating that "[a]ll unresolved differences of opinion between the Company [Mid-Continent] and the Reinsurer[ ] relating to this Agreement, including its formation and validity, shall be submitted to arbitration . . . ." Dkt. # 23, Ex. B, at 3. The agreement contained similar language regarding the selection of arbitrators and arbitration procedures.

Four of Mid-Continent's insureds filed claims under excess commercial liability policies and Mid-Continent defended and indemnified their insureds as required by contract. As a result of these

claims, Mid-Continent alleges that it incurred expenses that should have been covered under its reinsurance agreements with GRC. However, GRC refused to reimburse Mid-Continent for any portion of the defense or liability costs associated with these claims. As a result of GRC's refusal, Mid-Continent filed this lawsuit on September 12, 2006, alleging that GRC breached the reinsurance contracts. After the lawsuit was filed, GRC sent Mid-Continent a demand for arbitration under each reinsurance contract, but Mid-Continent claimed that the arbitration clauses were unenforceable. Due to Mid-Continent's refusal to participate in arbitration, the subject motions were filed.

**II.**

GRC has filed a motion to compel arbitration arguing that the arbitration clauses in both reinsurance contracts are enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). GRC recognizes that the McCarran-Ferguson Act, 15 U.S.C. § 1012, saves state laws regulating the "business of insurance" from preemption, but argues that no Oklahoma statute prevents the application of the FAA. Plaintiff responds that the FAA does not apply to this case, because the arbitration provisions are unenforceable under Okla. Stat. tit. 12, § 1855(D).[2]

**A.**

The FAA permits private parties to contractually agree to resolve disputes outside of the judicial system, and creates a mechanism to move disputes "out of court and into arbitration as quickly and easily as possible." Southland Corp. v. Keating, 465 U.S. 1, 7 (1984) (quoting Moses H. Cone Memorial Hosp. v. Mecury Construction Corp., 460 U.S. 1, 22 (1983)). Traditionally,

---

[2] Plaintiff's response seems to suggest that Oklahoma law, standing alone, requires the Court to declare the arbitration provisions unenforceable. While Oklahoma law is relevant to the Court's inquiry, the Court will consider the effect of § 1855(D) only if the Court determines that the McCarran-Ferguson Act saves this statute from preemption by the FAA.

3

courts were hesitant to enforce arbitration clauses in private contracts, but Congress passed the FAA to create a strong national policy in favor of enforcing agreements to arbitrate. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). Under the FAA, arbitration agreements are construed just like any other contract and a written agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University, 489 U.S. 468 (1989). However, the FAA applies only to "a contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 1; Allied-Bruce Terminex Co., Inc. v. Dobson, 513 U.S. 265, 273 (1995). In this case, there is no dispute that the reinsurance contracts involve commerce, especially under the broad definition of commerce utilized in the FAA. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001) (affirming prior decision that Congress intended to exercise its full power under the Commerce Clause when it enacted the FAA); Allied-Bruce Terminex, 513 U.S. at 274-75 (1995) (holding that Congress extended the reach of the FAA to the limits of the Commerce Clause).

Both parties recognize that Uniform Arbitration Act ("UAA"), as adopted by Oklahoma in 2006, states that the UAA "shall not apply to . . . contracts which reference insurance." Okla. Stat. tit. 12, § 1855(D). The McCarran-Ferguson Act, 15 U.S.C. § 1012, provides that the "business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." Under the McCarran-Ferguson Act, if a state statute relates to the business of insurance, the statute will not be preempted by federal law. Therefore, before the Court can determine whether the arbitration agreements are enforceable, the

4

Court must initially decide whether the McCarran-Ferguson Act saves Okla. Stat. tit. 12, § 1855(D) from preemption.

In a similar case, the Tenth Circuit held that a Kansas statute invalidating arbitration provisions in a "contract of insurance" fell within the McCarran-Ferguson Act as a statute regulating the business of insurance. In <u>Mutual Reinsurance Bureau v. Great Plains Mutual Insurance Company, Inc.</u>, 969 F.2d 931 (10th Cir. 1992), Great Plains Mutual Insurance Company ("Great Plains") entered a reinsurance contract with Mutual Reinsurance Bureau ("Mutual Reinsurance") and the contract included an arbitration provision. <u>Id</u>. at 932. Kansas was struck by severe weather causing property damage to many of Great Plains' insureds, and Great Plains subsequently made claims with Mutual Reinsurance under the reinsurance agreement for reimbursement. Mutual Reinsurance initially paid $275,401.09 on these claims, but it later determined that it overpaid Great Plains. Under the contract, Mutual Reinsurance sent Great Plains a demand for arbitration, but Great Plains refused to participate in the arbitration proceedings. The arbitration panel ruled that Mutual Reinsurance's payments were conditional, and found that it was entitled to reimbursement of $142,500 from Great Plains. <u>Id</u>. Great Plains refused to pay the arbitration award, because it claimed that the arbitration award was void for lack of jurisdiction. It filed an action in federal court pursuant to the FAA to have the arbitration award declared void. The district court entered judgment for Mutual Reinsurance and upheld the arbitration award.

The Tenth Circuit agreed with Great Plains, and found that the arbitration panel lacked jurisdiction under Kansas law. In Kansas' version of the UAA, "a written agreement to submit any existing controversy to arbitration or a provision in a written contract, other than a contract of insurance . . . is valid and irrevocable." Kan. Stat. Ann. § 5-401 (amended 1995). Great Plains

5

argued that the statute regulated the business of insurance under the McCarran-Ferguson Act, and was not preempted by the FAA. The Tenth Circuit, relying on SEC v. Nat'l Sec., Inc., 393 U.S. 453 (1969), focused on the relationship between the insurer and the insured when determining whether Kansas statute was preempted by the FAA. The Tenth Circuit also noted three factors stated by the Supreme Court when considering whether state law concerns the "business of insurance":

> first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

Id. at 933 (quoting Union Labor Ins. Co. v. Pireno, 458 U.S. 119 (1982)). The Tenth Circuit found that the district court relied on a "strained" interpretation of the Kansas statute to determine that section 5-401 did not regulate insurance. Even though the statute was in the UAA, not the insurance code, the statute directly applied to the business of insurance and, under the McCarran-Ferguson Act, was not preempted by the FAA. The arbitration award was vacated, because the arbitration clause of the reinsurance contract was unenforceable under Kansas law.

Defendant unsuccessfully attempts to distinguish Mutual Reinsurance Bureau from this case. GRC argues that the Kansas statute in Mutual Reinsurance Bureau had the effect of invalidating an arbitration clause, while the Oklahoma statute at issue in this case merely removes the arbitration agreement from the scope of Oklahoma's version of the UAA. However, this argument does not address the applicability of the McCarran-Ferguson Act. Section 1855(D) may still regulate the business of insurance, even if it does not have the effect of invalidating the arbitration provision. Defendant argues that plaintiff has the burden to show that the FAA "invalidates, impairs, or supersedes a state law regulating the business of insurance." Hart v. Orion Ins. Co., 453 F.3d 1358,

1360 (10th Cir. 1971). In Mutual Reinsurance Bureau, the Tenth Circuit was clear that a state statute does not have to be codified in the state insurance code to regulate insurance. 969 F.2d at 935 ("The application of the Kansas statute . . . to insurance as an exception is clear and direct although included in an act relating basically to arbitration."). The Kansas statute used broad language similar to section 1855(D)'s exclusion of contracts "which reference insurance." After reviewing defendant's argument, the Court finds no legitimate basis to distinguish Mutual Reinsurance Bureau from this case.

The McCarran-Ferguson Act requires the Court to apply section 1855(D) because it is a statute that regulates the business of insurance. Section 1885 uses broad language prohibiting the enforcement of an arbitration clause in any contract "which reference[s] insurance." The Court would have to create a strained interpretation of section 1855(D) to conclude that this statute was not intended to regulate the business of insurance. In Mutual Reinsurance Bureau, the Tenth Circuit clearly held that statutes exempting insurance contracts from the UAA fell within the scope of the McCarran-Ferguson Act. Therefore, the Court must consider the impact of section 1855(D) on the arbitration clauses in the reinsurance contracts.

**B.**

GRC argues that, even if the arbitration agreements are excluded from the UAA, the arbitration agreements are enforceable under Oklahoma's common law. GRC claims that if section 1855(D) applies, this simply removes the arbitration agreements from the purview of the UAA, but does not invalidate the arbitration agreements. Rollings v. Thermodyne Indus., Inc., 910 P.2d 1030, 1036 (Okla. 1996) (clarifying prior precedent that exclusion of arbitration agreement from the UAA

requires the court to refer to common law).  However, Oklahoma law is clear that the arbitration agreements between Mid-Continent and GRC are unenforceable.

Oklahoma common law does not permit the enforcement of voluntary arbitration agreements between private parties unless the public policy of the state, as evidenced by statutes and judicial decisions, supports enforcement of the arbitration agreement.  The Oklahoma Supreme Court has held that arbitration provisions falling outside of the UAA are governed by common law and, generally, "agreements to submit future controversies to arbitration are contrary to public policy." Cannon v. Lane, 867 P.2d 1235, 1238 (Okla. 1994).  In Cannon, PacifiCare of Oklahoma ("PacifiCare") obtained an order compelling a state employee to arbitrate an insurance coverage dispute.  On a petition for writ of mandamus challenging the trial court's ruling, the Oklahoma Supreme Court held that the arbitration provision was unenforceable under the UAA as a "contract with reference to insurance." Id. at 1236-37.  Because the arbitration agreement was not within the scope of the UAA, the court referred to statutory and common law to determine the enforceability of the arbitration agreement.  By statute, Oklahoma courts are not permitted to enforce any contract that would limit a person's access to the courts:

> Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void.

Okla. Stat. tit. 15, § 216.  The court reviewed prior Oklahoma case law holding that arbitration agreements were unenforceable and held that, without legislative authority, an arbitration agreement was contrary to the public policy of Oklahoma.

GRC claims that the Oklahoma Supreme Court has since found that the public policy of Oklahoma favors the enforcement of arbitration agreements.  Defendant relies on Rollings, where

the Oklahoma Supreme Court stated that Oklahoma has "a strong public policy which favors [arbitration]." 910 P.2d at 1036. However, the Court was addressing public policy under the UAA, because the arbitration clause in Rollings was governed by the UAA. The court was explicit that Cannon was inapplicable to the facts of Rollings, because Cannon dealt specifically with arbitration agreements that fell outside of the UAA. Id. at 1036. Defendant cites several cases stating that the public policy of Oklahoma favors arbitration, but those cases rely on the UAA to support the conclusion that Oklahoma public policy permits the enforcement of arbitration agreements. Cason v. Conoco Pipeline Co., 280 F. Supp. 2d 1309, 1314 (N.D. Okla. 2003); Baker v. Conoco Pipeline Co., 280 F. Supp. 2d 1285, 1293 (N.D. Okla. 2003); James v. Zachritz, 134 P.3d 926, 927 (Okla. Civ. App. 2006).

The Oklahoma Supreme Court has not overruled its decision in Cannon, and this Court is bound to follow Cannon. Therefore, the arbitration agreements in both reinsurance agreements are unenforceable under Oklahoma law. GRC argues that Oklahoma law violates the Contracts Clause of the federal constitution, because a state may not retroactively "impair[] the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. According to GRC, the arbitration clauses were enforceable when the parties originally executed the reinsurance contracts.[3] After January 1, 2006, the revised version of the UAA applied to all arbitration agreements "whenever made." Okla. Stat. tit. 12, § 1854(C). The Court has discussed the applicability of the current version of the UAA and has found that the arbitration agreements are unenforceable under the UAA.

---

[3] Until January 1, 2006, § 1885(D) provided that the UAA did "not apply to . . . contracts with reference to insurance except for those contracts between insurance companies."

9

Under the Contracts Clause, the threshold inquiry is whether state law "operate[s] as a substantial impairment of a contractual relationship." Energy Reserves Group, Inc. v. Kansas Power & Light, 459 U.S. 400, 411 (1983). The severity of the impairment could increase the level of scrutiny, but when an industry has historically been subject to state regulation, the regulated party has less cause to complain. Id. (citing Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978)). If the regulation constitutes a substantial impairment, the state must offer a significant and legitimate public purpose for the regulation. Energy Reserves Group, 459 U.S. at 411-12. Once the state has identified a legitimate public purpose, the court should consider whether the regulation is "of a character appropriate to the public purpose." Id. at 412. In this case, the amendments to the UAA have not caused a substantial impairment to GRC's rights. The essential obligations of the contract, particularly GRC's financial obligations, have not been altered by an amendment to the UAA. GRC has not cited any cases showing that an amendment to a state statute invalidating an arbitration agreement is a substantial impairment under the Contracts Clause, nor can the Court find any cases supporting this conclusion.[4] The Court finds that the Contracts Clause does not require the Court to enforce the arbitration agreement, because GRC can not establish that the threshold requirement for invoking the Contracts Clause has been satisfied.

---

[4] GRC cites two cases, but neither case supports its argument. In United States Trust Co. v. New Jersey, 431 U.S. 1 (1977), the Supreme Court considered whether the Contracts Clause permitted a state to alter its own obligations by amending a statute, but this case is inapplicable to changes in state law that affect contracts between two private parties. GRC also cites Humberto Fernandez-Vargas v. Gonzales, 126 S. Ct. 2422 (2006), which deals with the retroactive application of federal immigration laws, but this case does not discuss the application of the Contracts Clause. These cases do not support GRC's argument that the Contracts Clause applies under the facts of this case.

**IT IS THEREFORE ORDERED** that Defendant General Reinsurance Corporations's Motion to Compel Arbitration and to Dismiss and Brief in Support (Dkt. ## 23, 24) is **denied**, and Motion of Plaintiff Mid-Continent Casualty Company to Stay Implementation of Arbitration Procedure and Brief in Support (Dkt. # 26) is **moot**.

**DATED** this 15th day of February, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT